**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

CONNIE RHODES and KENNETH
RHODES,

                Plaintiffs,

vs.                                                                          Case No. 5:11-cv-00471-TJC-TBS

NOVARTIS PHARMACEUTICALS
CORPORATION,

                Defendant.

## ORDER

This case is before the Court on defendant Novartis Pharmaceuticals Corporation's

("Novartis") Motion to Dismiss, or, in the Alternative, for a More Definite Statement (Doc. 4),

and plaintiffs Connie and Kenneth Rhodes' ("the Rhodes") Response (Doc. 6).

**I.      Jurisdiction**

The Rhodes initially filed this action on March 30, 2011 in the Fifth Judicial Circuit in

and for Lake County, Florida.  (Doc. 1 at ¶1.)  Novartis properly removed to this Court on

August 15, 2011. (Doc. 1.)  This Court has diversity jurisdiction pursuant to 28 U.S.C. §

1332(a)(1).

**II.     Background**

According to the Amended Complaint, Novartis developed and manufactured a

pharmaceutical, Zelnorm, for the primary purpose of treating irritable bowel syndrome ("IBS")

in women with constipation.  (Doc. 2 at ¶¶ 4, 6.)  In 2000, Novartis submitted an application

to the Food and Drug Administration ("FDA") for approval to market Zelnorm.  (Doc. 2 at ¶

8.) The FDA initially denied Novartis' application (Doc. 2 at ¶ 9), but after further review approved Zelnorm for marketing in 2002 (Doc. 2 at ¶ 10). Due to postmarketing studies which revealed certain health risks posed by Zelnorm, the FDA required that Novartis add additional safety warnings to the drug's label first in 2004, and again in 2005. (Doc. 2 at ¶¶ 12-14.) In 2005, there were more than two million prescriptions written for Zelnorm, making it one of the top two hundred drugs prescribed. (Doc. 2 at ¶ 11.) However, two studies, the first in 2006 and the second in 2007, found that patients taking Zelnorm were at risk of specific cardiovascular problems[1] (Doc. 2 at ¶¶ 16-18), which resulted in the FDA directing Novartis to remove Zelnorm from the market (Doc. 2 at ¶¶ 17-18). After taking Zelnorm, Connie Rhodes suffered a series of cardiovascular events requiring hospitalization and resulting in other serious injuries.[2] (Doc. 2 at ¶¶ 23-25.)

## III.    Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff, construing the allegations in the light most favorable to the plaintiff. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir.

---

[1] The data showed an eight-fold increase of heart attacks and strokes among Zelnorm users compared to placebo. (Doc. 2 at ¶ 18.)

[2] Connie Rhodes began taking Zelnorm in 2002. (Doc. 2 at ¶ 24.) In 2004, she suffered atypical chest pain, angina, and a possible myocardial infarction resulting in hospitalization and a heart catherization. (Id.) In August 2006, Rhodes was again prescribed Zelnorm by her gastroenterologist. (Id. at ¶ 25.) In March 2007, she suffered a syncope where she passed out and fractured her jaw and injured her neck; both injuries required surgical repair. (Id.)

2006) (citing Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003)).  "Federal Rule of Civil

Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the

pleader is entitled to relief.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007).  However, "[t]o

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."

Twombly, 550 U.S. at 555 (citations omitted).  In its inquiry, the reviewing court must "draw

on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950.

## IV.    Discussion

In its Motion to Dismiss, or, in the Alternative, for a More Definite Statement, Novartis

contends that four of the Rhodes' eight claims (Counts III, V, VI, and VII) should be

dismissed or re-pleaded for failure to sufficiently plead each cause of action.  (See Doc. 4.)

In their Response, the Rhodes concede that Count V (breach of implied warranty of

merchantability) and Count VI (breach of express warranty of merchantability) are due to be

dismissed for lack of privity.  (Doc. 6 at 3.)  Therefore, Counts V and VI are **DISMISSED with

prejudice**, and the Court proceeds to address the two remaining Counts for which Novartis

seeks dismissal.

### A.    Count III (Strict Liability–Manufacturing Defect)

In Count III of the Amended Complaint, the Rhodes allege that Novartis, among other

things, manufactured Zelnorm in an unreasonably dangerous condition with the intent that

3

Zelnorm would reach consumers.  (Doc. 2 at ¶¶ 49-51.)  Additionally, the Rhodes contend

that Zelnorm contained manufacturing defects because it was not made in accordance with

Novartis' specifications or performance standards, and the manufacturing defects occurred

while Zelnorm was in the possession and control of Novartis.  (Doc. 2 at ¶ 51.)  As a direct

result of the manufacturing defect, and after Connie Rhodes took Zelnorm, she suffered

many injuries.  (Doc. 2 at ¶ 52; see supra at 2.)

    The Rhodes have alleged causes of action for both a design defect (Count II) and a

manufacturing defect (Count III).  However, Novartis moves only to dismiss Count III.  In

doing so, Novartis makes two contentions.  Novartis first contends that the Rhodes failed to

sufficiently plead one of the required elements for the existence of a manufacturing defect

under Florida law.  (Doc. 4 at 3-5.)  Manufacturing defect and design defect are two separate

theories of liability[3] based on a claim of strict liability.  See generally Benitez v. Synthes, Inc.,

199 F. Supp. 2d 1339, 1344 (M.D. Fla. 2002).  In order to satisfy either theory, a plaintiff

must first properly plead a claim for strict liability.  Id.  To plead a proper claim for strict

liability under Florida law:  "[(1)] the user must establish the manufacturer's relationship to

the product in question, [(2)] the defect and unreasonably dangerous condition of the

product, and [(3)] the existence of the proximate causal connection between such condition

---

[3] A design defect claim alleges that all products were manufactured as intended and they all contained an alleged defect. On the other hand, a manufacturing defect claim alleges that a mistake in the manufacturing process occurred, rendering a specific product defective. See Harduvel v. Gen. Dynamics Corp., 878 F.2d 1311, 1317 (11th Cir. 1989) (citation omitted) ("This distinction between 'aberrational' defects and defects occurring throughout an entire line of products is frequently used in tort law to separate defects of manufacture from those of design.").

and the user's injuries or damages." West v. Caterpillar Tractor Co. Inc., 336 So. 2d 80, 86-87 (Fla. 1976).

Novartis argues that the Rhodes failed to properly allege a particular manufacturing defect, which resulted in Zelnorm being unreasonably dangerous for its intended use. (See Doc. 4 at 4.) Thus, Novartis contends that Count III is premised on conclusory allegations. (Id.) This Court disagrees. Paragraph 51 of the Amended Complaint states "Zelnorm was designed, developed and manufactured . . . by NOVARTIS in a defective and unreasonably dangerous condition . . . *[because] Zelnorm was not made in accordance with NOVARTIS' specifications or performance standards*". (Doc. 2 at ¶ 51 (emphasis added).)  In addition, Count III reincorporates paragraph 45(a), which recites the specific risks and possible injuries associated with Zelnorm.[4]  (See Doc. 2 at ¶ 45.)  Although these statements do not provide all the specific facts constituting the manufacturing defect, and specific facts would be helpful to Novartis, the pleading standard for Count III is governed by the notice pleading requirement of Rule 8 as opposed to the heightened pleading requirement of Rule 9. Construed in the light most favorable to the Rhodes, the Amended Complaint provides more than a simple recitation of the bare elements for manufacturing defect, and therefore put Novartis on notice of the Rhodes' claim of a manufacturing defect.

---

[4] Paragraph 45(a) states that using Zelnorm subjected Connie Rhodes to the risk of stroke, heart attack, and/or other cardiovascular event, and/or the risk of developing hypovolemia, hypotension, severe diarrhea, intestinal ischemia or syncope, and other severe personal injuries. (Doc. 4 at ¶ 45(a).)  Paragraph 45(b) also states that Zelnorm was more dangerous than an ordinary consumer would reasonably expect, and more dangerous than other risks associated with other pharmaceutical medications for the treatment of IBS. (Id. at ¶ 45(b).)

Alternatively, Novartis contends that this Court should dismiss the manufacturing defect claim because the allegations of the Amended Complaint more directly support a design defect theory rather than a manufacturing defect theory.  (See Doc. 4 at 4-5.) However, despite the distinction between manufacturing defects and design defects, it is possible that both defects can occur in the same product.  See Harduvel v. Gen. Dynamics Corp., 878 F.2d 1311, 1318 (11th Cir. 1989) ("[T]he fact that plaintiff's general theory of the case presented . . . a product-wide design flaw would not preclude proof of a manufacturing defect as well.").

At the Motion to Dismiss stage, it is not always reasonable to expect a plaintiff to know all of the technical reasons why a manufacturing defect occurred.  See Bailey v. Janssen Pharm., Inc., 288 F. App'x 597, 608 (11th Cir. 2008) (per curiam) (stating that whether harm occurred because of a manufacturing error or a design error may be difficult for a consumer to know prior to discovery).  In their manufacturing defect Count, the Rhodes have alleged Novartis' failure to produce Zelnorm in accordance with the manufacturer's "specifications and performance standards." This allegation will be either proven or disproven through discovery.  Notably, Novartis did not move to dismiss Count II, the Rhodes' design defect claim, which militates toward allowing the Rhodes to proceed with discovery on their manufacturing defect claim as well.  If necessary, the Court will revisit the issue at the summary judgment stage. Accordingly, Novartis' Motion to Dismiss Count III (strict liability–manufacturing defect) is **DENIED**.

### B.      Count VII (Fraudulent Misrepresentation)

In Count VII of the Amended Complaint, the Rhodes allege Novartis knowingly, recklessly, and wilfully made false and fraudulent representations that Zelnorm had been properly tested and was found to be safe and/or effective at treating IBS.  (Doc. 2 at ¶¶ 71-73.)  The Rhodes contend that Novartis made these misrepresentations with the intent of inducing Connie Rhodes, the public in general, and the medical and healthcare community into using, recommending, and prescribing Zelnorm.  (Doc. 2 at ¶ 74.)  In relying upon the misrepresentations, Connie Rhodes took Zelnorm, and thereby suffered significant and permanent injuries.  (Doc. 2 at ¶¶ 75-79; see supra at 2.)

Novartis contends that the Rhodes have failed to plead Count VII with the required specificity.  (Doc. 4 at 9-10.)  To state a claim for fraudulent misrepresentation under Florida law, a party must plead "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985) (citation omitted).  A party alleging fraud must state with particularity the circumstances constituting such fraud.  Fed. R. Civ. P. 9(b).  An allegation of fraud should alert defendants to the "precise misconduct with which they are charged". Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1370 (11th Cir. 1997) (per curiam).  Further, in order to plead fraud with particularity, a plaintiff must provide:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not

7

> making) same, and (3) the content of such statements and the
> manner in which they misled the plaintiff, and (4) what the
> defendants obtained as a consequence of the fraud.

Id. at 1371 (citation omitted) (internal quotation marks omitted).  The Amended Complaint

lacks the specific factual allegations required to support elements one or two.  The Rhodes

fail to allege what statements, documents, or oral representations Novartis made, the time

and place of each statement, and who made each statement.  Because such allegations are

required in order to sufficiently plead a cause of action for fraud, the Rhodes' Amended

Complaint does not alert Novartis to the misconduct with which it is charged, and therefore

is insufficiently pled.  However, out of an abundance of caution, the Court will give the

Rhodes another opportunity to plead this Count.  Accordingly, Count VII (fraudulent

misrepresentation) is **DISMISSED without prejudice** to amend.

Accordingly, it is hereby

**ORDERED**:

Defendant's Motion to Dismiss, or, in the Alternative, for a More Definite Statement

is **GRANTED IN PART** and **DENIED IN PART**.  No later than **November 22, 2011**, Plaintiffs

shall file their Second Amended Complaint.  No later than **December 20, 2011**, Defendant

will respond to the Second Amended Complaint.

**DONE AND ORDERED** at Jacksonville, Florida this 1st day of November, 2011.

ah.
Copies:
counsel of record

TIMOTHY J. CORRIGAN
United States District Judge

8